Mr. Chief Justice Shepard
delivered the opinion of the Court:
Mandamus is an extraordinary writ that may be granted by courts to enforce a ministerial duty plainly defined and required by law. It cannot be perverted to serve the purpose of .an ordinary suit, or to operate as a writ of error.
The extent of the power that may be asserted by the Federal courts over executive officers, through this writ, has been plainly defined by the Supreme Court of the United States in numerous decisions, which it is unnecessary to cite. The effect of those decisions was thus stated by us in a former decision: “Where the duty prescribed is plain and specific, admitting of -no discretion, calling for the exercise of no judgment, and the •officer charged therewith refuses to perform it, to the injury -or deprivation of the right of another, mandamus will lie to compel him to its performance. It will lie where the duties are discretionary or even strictly judicial; never, however, to revise Action that has been taken, but to compel reception and consid *561 eration, or the taking of jurisdiction.” Seymour v. United States, 2 App. D. C. 240-246.
The principle directly applicable here may be restated as follows: Where the duty to be performed is judicial in its nature, the judicial power may be invoked to compel the reception and consideration of the claim, demand, or action; that is, the taking of jurisdiction and the grant of an opportunity for hearing in a proper case; but it cannot be exercised to direct the officer in the decision that he may render after taking jurisdition. In our opinion, the principles stated above were correctly applied by the learned trial justice to the facts disclosed by the pleadings in this case. Without consuming time with a recital of the several acts of Congress defining the powers and duties of the accounting officers of the Treasury, it is sufficient to say that they were charged with the duty of examining the claims of officers of the army, such as this, and settling their accounts for pay and allowances under the statutes providing therefor. Relator’s claim was therefore properly presented to them both first and last. When the claim was first presented in 1890, this duty was performed by the predecessors of defendants, who, after consideration, rejected the claim. This decision was made December 15, 1890, and certified to the claimant. There was no right of appeal from that decision to the district courts. But under the statutes conferring jurisdiction upon the court of claims of suits against the United States, the relator was entitled to an action in that court to establish the validity of his claim, after its rejection by the Treasury officials. Their adverse decision was no bar; it merely afforded the occasion for the exercise of the jurisdiction conferred upon the court. Instead of availing himself of that right, as some other officers did, the relator suffered his claim to slumber for nearly twenty years. His right of action in the court of claims having become barred by the statute of limitations relating to remedies in that court, he again presented his claim to the then Auditor and Comptroller, in October, 1910.
Contending that the former decision was in open disregard of the plain provisions of sec. 1262, U. S. Comp. Stat. 1901, p. *562 896, and of the decisions heretofore mentioned, he demanded that they vacate or disregard the former decision, and resettle his account by allowing the sum claimed to be due. They did not refused to receive the claim or to consider it, but, after hearing, rejected it on the ground that it was beyond their power to set aside the decision of their predecessors for mistake of law made therein. In other words, their decision was that before the Treasury Department the demand had become res judicata. The relator contends that this was not the consideration of his case “upon its merits” that he was entitled to. What he regards as the consideration of the case upon its merits is expressed in the allegations and prayers of his petition. In short, it was to disregard the former decision because palpably erroneous; and, in obedience to the meaning of sec. 1262, as interpreted by the Supreme Court of the United States in the decision referred to, to resettle the account and allow the demand. Doubtless, if the defendants had felt themselves at liberty to re-adjudicate the claim, they would have allowed it; but before allowance they had to determine whether they were concluded by the former decision. As set out in the answer, it was decided many years ago by the accounting officers of the Treasury, that they have not the power to reopen and review the decisions of their predecessors save when, by reason of mistake or ignorance of fact, it would be clearly inequitable and unjust that the decision should stand. This rule, they say, has been followed for many years, and has been confirmed by judicial decisions. See United States v. Bank of Metropolis, 15 Pet. 377— 400, 10 L. ed. 774-782. This involves an important question of law, which, however, we are not called upon to decide. Assuming, for the sake of the argument, that they did have the power, it does not follow that they were necessarily bound to exercise it. If they had the power, there was no law imposing its exereise upon them as a plain ministerial duty upon the demand of a claimant. Whether'they would do-so or not, therefore, involved the exercise of discretion, and that discretion is beyond the control of any judicial tribunal. United States ex rel. Riverside Oil Co. v. Hitchcock, 190 U. S. 316—324, 47 *563 L. ed. 1074-1078, 23 Sup. Ct. Rep. 698. Discussing, in that case, the decision of an executive officer, Mr. Justice Peckham said: “Whether he decided right or wrong is not the question. Having jurisdiction to decide at all, he had necessarily jurisdiction, and it was his duty, to decide as he thought the law was, and the courts have no power whatever, under those circumstances, to review his determination by mandamus or injunction.” And it was further said in language applicable to this case: “Nor does the fact that no writ of error will lie in such a case as this, by which to review the judgment of the Secretary, furnish any foundation for the claim that mandamus may therefore be awarded. The responsibility, as well as the power, rests with the Secretary, uncontrolled by the courts.” Id. p. 325.
If the relator, as would seem to be the case, was denied a just demand by the original decision of the Treasury officials, the Congress alone has the power to furnish relief.
By resting our decision upon the single ground stated, we are not to be understood as having considered, much less decided, any of the other questions that have been argued.
For the reasons given, the judgment will be affirmed, with costs. ' Affirmed.